# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **B.H. and R.H.**

**No. 25-380** (Kanawha County CC-20-2021-JA-188 and CC-20-2021-JA-189)

## MEMORANDUM DECISION

Petitioner Mother D.M.[1] appeals the Circuit Court of Kanawha County's May 8, 2025, order terminating her rights to B.H. and R.H., arguing that the court erred in finding that she was a neglecting parent, inappropriately handled her improvement period, and erred in terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Prior to the instant appeal, the proceedings below were previously before this Court. *See In re B.H.*, Nos. 22-678 and 22-680, 2023 WL 7439170 (W. Va. Nov. 9, 2023) (memorandum decision). Briefly, the DHS's initial petition concerned the petitioner's drug use, failure to follow medical advice after B.H. was diagnosed with failure to thrive, noncompliance with services, and the father's failure to supervise the children. *Id*. at *1-2. At adjudication, the petitioner stipulated to "drug use impairing ability to parent" and was granted a post-adjudicatory improvement period. *Id*. The petitioner was permitted to participate in Birth to Three services and medical appointments necessary to treat the children's extensive developmental delays and medical conditions. *Id*. At the dispositional hearing, the circuit court found that the petitioner failed to attend or participate in a majority of the children's medical appointments and terminated the petitioner's parental rights to the children. *Id*. at *5. After the petitioner appealed the circuit court's July 26, 2022, dispositional order, we vacated that order and remanded the matter based on inconsistencies between the evidence presented and the court's factual findings and the court's error in terminating the petitioner's rights on a basis for which she was never adjudicated. *Id*. at *8.

Following remand, in January 2024, the circuit court awarded the petitioner a post-dispositional improvement period and ordered the DHS to implement remedial and reunification services including parenting and adult life skills, random drug screens, and supervised visitation

---

[1] The petitioner appears by counsel Olubunmi Kusimo-Frazier. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Jason S. Lord appears as the children's guardian ad litem ("guardian"). Respondents E.T. and W.T., foster parents and intervenors below, appear by counsel Joseph H. Spano, Jr.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

with the children. In February 2024, the foster parents filed a motion to intervene and motion to prevent parental visitation. The foster parents argued that the DHS contacted them three days prior to the hearing regarding supervised visitation and that this was an insufficient time frame to introduce the parents to the children as they had not seen the petitioner or father in over a year. The petitioner agreed to delay supervised visitation until after the children began counseling on March 12, 2024, and the court granted the motion to intervene. Shortly thereafter, the children began supervised visitation with the parents with the children's therapist present. At a hearing in June 2024, the circuit court granted the petitioner a three-month extension to her improvement period, despite the guardian's proffer that there had been issues with supervised visitation.

At a July 2024 review hearing, the DHS recommended increasing visitation to include unsupervised visits because visits had gone well. However, the children's therapist testified that she did not believe that it was in the children's best interests to have unsupervised visits or reunite with the parents. She testified that the children have special needs and that the parents failed to adequately supervise them during visitation. The therapist was especially concerned due to the children's history of absconding from the parents. The therapist testified that, on one occasion, one child ran away from the parents at a playground and got outside of the fence before either parent noticed. Further, the therapist testified that the parents had to be regularly reminded to check and change B.H.'s diaper. Next, a service provider testified that the parents had attended all of the parenting education sessions that were offered. However, the provider was concerned about the parent's ability to implement what they had learned due to the children's special needs, which required them to have a minimum of five medical and/or therapy appointments per week. She testified that the parents had one vehicle, conflicting work schedules, and no plan in place that would allow either parent to transport the children to and from their appointments. Ultimately, the court ordered that the parents receive between two to four visits (supervised and unsupervised) with the children each week, with one unsupervised overnight visit per week. Additionally, the parents were ordered to attend and transport the children to all their medical and therapy appointments.

In September 2024, the DHS filed a motion to terminate the parents' visitation. At a hearing on the motion, the children's case manager testified that although some unsupervised visits had gone well, the parents failed to take the children to several medical appointments, which was detrimental to the children because they are "medically fragile" and their appointments are "crucial." Additionally, the case manager testified regarding the parents' inability to adequately supervise the children and the history of the children absconding from the parents during supervised visits. A receptionist at the children's therapy office also testified to an incident in September 2024 where one of the children absconded from the parents at an appointment and reached the door before the father caught him. Next, R.H.'s school principal testified that the five-year-old child exhibited explosive and violent behavior in the previous months, including throwing chairs, climbing on desks, punching teachers, spitting, and removing his clothing at school. Due to this behavior, R.H. was suspended five times within eighteen days. The intervenor foster mother testified that R.H.'s aggressive outbursts at school escalated after beginning unsupervised visits with the parents and that R.H. was not violent prior to those visits. She testified that R.H.'s special needs included autism, Attention-Deficit/Hyperactivity Disorder (ADHD), speech delay, fine motor skill delay, and sensory processing issues. B.H.'s special needs included plagiocephaly, torticollis, muscle tone weakness, and severe allergies. Due to this, the children had several

medical appointments per week including speech therapy, occupational therapy, and physical therapy. Finally, the parenting services provider testified that she had concerns about the parents' ability to control and discipline the children and wake up early to take them to school. She also testified that the parents told her that they believed R.H. would be kicked out of school for his behavior if they regained custody of him, so they intended to homeschool him. However, the parents reported that they did not have a homeschooling plan and that they would simply "make it work." Based on the foregoing, the circuit court found that both children have extraordinary special needs, that they do not adjust well to changes in their routine, and that they require multiple specialized medical/therapy appointments per week. Further, R.H. had increased negative behaviors at school since beginning unsupervised visitation with the parents. The court also found that the children were able to abscond from the parents on several occasions. Therefore, the court suspended the parents' visitation with the children.

In October 2024, the DHS filed an amended petition alleging that the parents medically neglected the children and failed to supervise them. Specifically, the DHS alleged that on four separate occasions in September 2024, the parents failed to take the children to their doctor and therapy appointments, and the intervenors took them instead. The DHS also alleged that on September 19, 2024, the parents returned B.H. to the intervenors in the same diaper he began the visit in, which was saturated with urine and leaking feces onto his clothing. Again, on October 1, 2024, the parents returned B.H. to the intervenors with shorts saturated with urine. The DHS further alleged that the parents did not adequately supervise the children and that in May 2024, during supervised visitation, both children absconded from the parents several times before either parent noticed, the parents did not notice B.H. playing with staples, they did not follow the directives of B.H.'s physical therapist to ensure he was sitting appropriately, and they allowed B.H. to remain in a dirty diaper.

The circuit court held an adjudicatory hearing on the amended petition in March 2025. The court considered all prior witness testimony without objection. The individualized parenting provider testified that the issue of the parents' inability to adequately change the children's dirty diapers had been a frequent and reoccurring issue for years and that she did not believe that the parents could appropriately care for the children. Both intervenors testified that the parents returned B.H. to them in in a soiled diaper on two occasions where urine and feces were leaking onto his clothes. Based upon this evidence, the court found that the children have extraordinary special needs, the children did not react well to supervised visitation, and their behavior declined after the introduction of visitation with the parents. The court also found that the parents repeatedly failed to follow the court's order of transporting the children to their medical and therapy appointments. Ultimately, the court found, by clear and convincing evidence, that "both [] parents have failed to supervise the [] children in all the paragraphs that are alleged in the amended petition" and that the "parents are not sufficiently motivated or organized to provide for the needs" of the children. Further, the court found that the children's health and welfare were harmed by the petitioner's actions and adjudicated the petitioner as a neglecting parent.

The circuit court held a dispositional hearing in April 2025. A CPS worker testified that the DHS recommended termination of both parents' parental rights. This recommendation was based on the parents' inability to rectify the conditions of neglect, the fact that the children had been in foster care for four years, and the children's significant physical, medical, and emotional

needs. Additionally, the worker testified that the children's behavioral issues had improved since visitation with the parents ended. At the conclusion of disposition, the court found that this matter had been "longstanding with multiple hearings" and that the petitioner struggled to meet the needs of the children and had not rectified the issues for which she was adjudicated, despite extensive services. Further, the court ordered the petitioner to transport the children to their medical appointments and "the record is replete [with] incidences in which [she] did not." Additionally, the court found that the children had significant behavioral issues when visitation was implemented and the issues increased with more frequent visitation. Ultimately, the court found that the conditions of abuse and neglect could not be rectified in the near future and that reunification was not in the best interests of the children. Accordingly, the court terminated the petitioner's parental rights to B.H. and R.H. It is from this order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, 930 S.E.2d 400 (2026). On appeal, the petitioner argues that the circuit court's finding that she was a neglecting parent was not supported by sufficient evidence. Further, the petitioner argues that the insufficiency of evidence suggested that the court inappropriately shifted the burden onto the petitioner, rather than requiring the DHS to prove neglect by clear and convincing evidence.[4] West Virginia Code § 49-4-601(i) requires the court to "make a determination . . . as to whether the child is abused or neglected and whether the [parent] is abusing [or] neglecting," with the further requirement that "[t]he findings must be made upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." However, "[t]he statute . . . does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden." Syl. Pt. 3, *In re F.S.*, 233 W. Va. 538, 759 S.E.2d 769 (2014) (quoting Syl. Pt. 3, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995)). In regard to this burden, we

---

[3] The father's parental rights were also terminated. The permanency plan for the children is adoption in the current foster placement.

[4] The petitioner also argues that the court did not follow statutory procedures regarding the case plan and that it was error for the court to rely on the case plan because it was "sparse with details." However, the record reflects that the petitioner neither objected to the case plan nor raised this issue with the circuit court. Accordingly, this argument is waived. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999).").

The petitioner also makes a passing argument that the circuit court violated her right to due process. However, she provides neither any argument in support of these assertions nor any applicable authority on the issue, both in violation of Rule 10(c)(7) of the Rules of Appellate Procedure. Indeed, as we have explained, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). Accordingly, we will not address this argument.

have explained that "[c]lear and convincing evidence means that more than a mere scintilla of evidence has been presented to establish the veracity of the allegations of abuse and/or neglect, but it does not impose as exacting an evidentiary burden as criminal proceedings which generally require proof beyond a reasonable doubt." *In re A.M.*, 243 W. Va. 593, 598, 849 S.E.2d 371, 376 (2020). Here, as set forth above, it is apparent that the circuit court appropriately placed the burden of proof onto the DHS, which presented extensive evidence, including several witnesses, that the petitioner failed to adequately supervise the children on multiple occasions and failed to properly change R.H.'s diaper to the point where urine and feces leaked onto his clothes. Indeed, a neglected child is, in relevant part, one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, *supervision*, medical care, or education." W. Va. Code § 49-1-201 (emphasis added). Therefore, the circuit court did not err in adjudicating the petitioner as a neglecting parent.

The petitioner next argues that the court improperly handled her improvement period. Specifically, the petitioner states that "the record is silent on whether [] services were timely and adequately provided" and asserts that she was not provided with specialized resources to address the children's special needs. Our review of the record reveals that the petitioner was provided with parenting and adult life skills classes, supervised and unsupervised visitation, and drug screening. The parents were also ordered to attend all therapy and medical appointments, in order to address the children's special needs. Notably, it does not appear that the petitioner objected to any terms of the improvement period, requested additional services, or raised these issues with the circuit court. Accordingly, the petitioner has waived this argument on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)."). The petitioner also argues that the court failed to consider the foster parents' failure to facilitate visitation. However, the record reflects that the circuit court ordered supervised visitation on January 25, 2024, and the foster parents filed their motion to intervene and prevent parental visitation on February 29, 2024. At a hearing on this motion, the parties *agreed* that the petitioner's visitation would begin after the children's therapy began on March 12, 2024. Thereafter, the record reflects that the intervenors cooperated with all visitations between the petitioner and the children. Therefore, the petitioner is entitled to no relief in this regard.

Finally, the petitioner argues that the court erred in terminating her parental rights and not awarding a less restrictive dispositional alternative. We disagree. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights without the use of a less restrictive alternative "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 796, 266 S.E.2d 114 (1980))). The petitioner asserts that her substantial compliance with her improvement period by maintaining sobriety, maintaining employment, and participating in parenting classes demonstrated "a reasonable likelihood of correction, particularly if additional supports were provided" and that the court's reliance on "missed appointments and generalized supervision concerns" were not

sufficient to warrant termination. However, we have highlighted that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't of Human Serv. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Here, the court found that the record was "replete" with incidents in which the petitioner did not transport the children to their medical appointments, that the petitioner failed to supervise the children on multiple occasions, that the petitioner struggled to meet the needs of the children, and that the case had been ongoing for four years. These findings support the court's conclusion that there was no reasonable likelihood that the conditions of abuse could be substantially corrected in the near future. *See* W. Va. Code § 49-4-604(d)(3) (stating that "'[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help[,]" including circumstances where the abusing adult "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts"). Additionally, the court found that reunification with the petitioner was not in the children's best interests. Based upon all of the above, we conclude that the circuit court did not err in terminating the petitioner's parental rights instead of imposing a less restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 8, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: July 28, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice H. L. Kirkpatrick
Justice James W. Flanigan